UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM ARTHUR BROOKS,

                          Plaintiff,

v.                                                        1:16-CV-0531
                                                         (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS          PETER MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.              JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 16.)

      Currently before the Court, in this Social Security action filed by William Arthur Brooks ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 14.) For the reasons set forth below, it is ordered that Plaintiff's motion is denied and Defendant's motion is granted.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born in 1962. (T. 67.) He received his GED. (T. 203.) Generally, Plaintiff's alleged disability consists of mental health impairments, back impairment, and shoulder impairment. (T. 202.) His alleged disability onset date is February 1, 2004. (T. 66.) His date last insured is September 30, 2006. (T. 198.) He previously worked as auto service attendance and dairy farm worker. (T. 203.)

   B.  **Procedural History**

On March 5, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and on March 21, 2013 for Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 65, 66.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 7, 2014, Plaintiff appeared before the ALJ, Robert Wright. (T. 36-64.) On December 8, 2014, ALJ Wright issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-25.) On March 15, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-21.) First, the ALJ found that Plaintiff met the insured status

requirements through September 30, 2006 and Plaintiff had not engaged in substantial gainful activity since February 1, 2004. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease; osteoarthritis of the bilateral shoulders, left greater than right; anxiety disorder; and depressive disorder. (*Id.*) The ALJ determined that from February 1, 2004 through September 30, 2006, Plaintiff had no medically determinable impairments. (T. 13-14.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15-16) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work[1]; however, Plaintiff could frequently use his upper extremities for fingering, feeling, and handling and occasionally bend, stoop, crouch, crawl, kneel, balance, climb stairs and ramps, reach overhead, and operate foot controls. (T. 19-20.) Further, the ALJ determined that Plaintiff could have occasional exposure to vibrations and extremes of heat and cold, never work with unprotected heights, ladders or scaffolds. (T. 20.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to accord proper weight to the opinion of Plaintiff's treating physician. (Dkt. No. 9 at 3-4[Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 4-5.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the treating physician's opinion did not relate to the period at issue and therefore the ALJ correctly declined to evaluate and assign weight to the opinion. (Dkt. No. 14 at 6-7 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ's physical RFC determination was not contradicted by the step two findings. (*Id.* at 7-8.) Third, and lastly, Defendant argues that the ALJ properly evaluated and incorporated the consultative examiner's medical opinion into the RFC determination. (*Id.* at 8-11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920 (2012). The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Treating Source, Neal Baillargeon, M.D.

On May 28, 2009, Dr. Baillargeon completed a New York State disability form. (T. 276-277.) Therein he opined that Plaintiff had physical and mental functional limitations. (T. 276.) Plaintiff argues that the ALJ committed legal error because he failed to specifically discuss the opinion, state the weight assigned to the opinion, and give good reasons for his findings. (Dkt. No. 9 at 10 [Pl's Mem. of Law].) Plaintiff's argument is without merit.

For a plaintiff to be entitled to SSD benefits, he must meet the insured status requirements of the Act. *See* 42 U.S.C. § 423(c); 20 C.F.R. §§ 404.130, 404.132. Here, the period at issue for the purposes of SSD is from the alleged onset date of February 1, 2004 through the date last insured of September 30, 2006. Dr.

Baillargeon's May 2009 opinion post-dates this period by approximately three years. Further, there is no indication from the report that Dr. Baillargeon was offering a retroactive opinion. Therefore, Dr. Baillargeon's opinion was not relevant to Plaintiff's claim from SSD benefits.

A plaintiff must establish that he is disabled on or after the date he applied for SSI benefits, March21, 2013, through the date of the ALJ's decision, December 8, 2014. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.330. Dr. Baillargeon's opinion pre-dates Plaintiff's application for SSI benefits by almost four years. Therefore, it is not relevant to the period at issue.

Because Dr. Baillargeon's opinion was not relevant to either of Plaintiff's claims, the ALJ did not err in failing to mention the opinion, weigh the opinion, or take the opinion into consideration. Further, any error in discussing the opinion was harmless. Dr. Baillargeon's May 2009 opinion indicated Plaintiff was "very limited" in his ability to push, pull and bend, and he opined Plaintiff had no mental functional limitations. (T. 276.) However, in August of 2009, Dr. Baillargeon completed the same form and opined that Plaintiff had only moderate physical functional limitations, could not lift weight over thirty pounds, could not repetitively bend/stoop/lift/carry, and had no mental functional limitations. (T. 281-282.) Dr. Baillargeon's limitations were not inconsistent with the ALJ's ultimate RFC determination. Therefore, the ALJ did not err in failing to discuss Dr. Baillargeon's May 2009 opinion because it did not relate to the period at issue and further any error would be harmless because the opinion is consistent with the ALJ's ultimate RFC determination.

    **B.    The ALJ's RFC Determination**

Plaintiff's RFC is the most he can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff argues that the ALJ's RFC determination was faulty in two aspects. First, Plaintiff argues that the ALJ's RFC determination failed to account for his step two findings. (Dkt. No. 9 at 4 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's RFC determination failed to account for all of mental limitations imposed by consultative examiner, Mena Stramenga, Ph.D. (*Id.* at 4-5.)

At step two the ALJ found that Plaintiff had a severe impairment of "osteoarthritis of the bilateral shoulders, left greater than right." (T. 13.) The ALJ's RFC limited Plaintiff to light work, with no reaching overhead with the non-dominant left upper extremity. (T. 17.) The ALJ's RFC determination was supported by substantial evidence in the record and was not inconsistent with his step two determination.

In making his step two determination, the ALJ relied on medical imaging conducted in November 2012 of Plaintiff's left shoulder. (T. 14.) At this step the ALJ also relied on the medical examination of consultative examiner, Kautilya Puri, M.D. (*Id.*) Dr. Puri observed that Plaintiff's left shoulder range of motion was decreased and Plaintiff's reflexes and strength were normal in his upper extremities. (*Id.*)

The ALJ relied on the medical imaging, Dr. Puri's examination, and Dr. Puri's opinion in formulating his RFC determination. Dr. Puri opined that Plaintiff had mild limitations to overhead reaching with his left upper extremity. (T. 328.)

Contrary to Plaintiff's assertion, the ALJ's step two determination and his RFC determination are not contradictory. (Dkt. No. 9 at 4 [Pl.'s Mem. of Law].) As stated by Defendant, by limiting Plaintiff to light work the ALJ took into consideration Plaintiff's

bilateral shoulder impairment. (Dkt. No. 14 at 7-8 [Def.'s Mem. of Law].) The ALJ's RFC further accounted for the additional limitations due to the greater severity of the impairment in Plaintiff's left shoulder. (T. 17.) Overall, the ALJ's RFC determination limiting Plaintiff to light work with the additional restriction of never reaching overhead with the non-dominant left upper extremity, was supported by medical imaging in the record and Dr. Puri's opinion.

Plaintiff next argues that the ALJ's mental RFC determination failed to account for all the limitations imposed by Dr. Stramenga. (Dkt. No. 9 at 4-5 [Pl.'s Mem. of Law].) Specifically, Dr. Stramenga opined that Plaintiff had marked difficulties relating adequately with others and marked difficulties appropriately dealing with stress. (T. 324.)

The ALJ afforded the opinion of Dr. Stramenga "significant weight." (T. 19.) However, the ALJ stated that the portion of her opinion in which she determined that Plaintiff had marked difficulties relating with others and marked difficulties appropriately dealing with stress were granted "less weight." (*Id.*) The ALJ stated that although Plaintiff had limitations in this area, the limitation were not as great as Dr. Stramenga opined. (*Id.*)

The ALJ's mental RFC determination, specifically, that Plaintiff could perform simple, routine, low stress work which required only occasional decision-making, occasional changes in the work setting, or occasional interactions with others, was supported by substantial evidence in the record. Dr. Stramenga's opinion is the only medical source opinion in the record; however, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56

9

(2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

The ALJ's mental RFC determination was supported by Dr. Stramenga's examination, her opinion, and Plaintiff's activities of daily living. On examination Dr. Stramenga observed that Plaintiff was cooperative, related in an adequate manner, and had appropriate eye contact. (T. 322.) She observed that his speech was normal, his though processes were coherent and goal-directed. (T. 323.) Plaintiff informed Dr. Stramenga that he left his last job after a year due to back pain. (T. 321.)

Plaintiff's activities of daily living further supported the ALJ's determination that Plaintiff did not have "marked" limitations in social functioning and could have "occasional" interaction with others. Plaintiff indicated that he was able to ride his bike to a food pantry and to appointments. (T. 17.) To be sure, Plaintiff testified that he did not like to associate with other people and tended to isolate himself. (T. 49, 215.) However, Plaintiff also testified that being on parole limited what he could do socially. (T. 47.) He testified that he was able to go to AA meetings, but stopped when he relapsed. (T. 48.) Plaintiff testified that he sees a physician for his physical impairments, but made no mention of treatment for mental impairments. (T. 43.)

In addition, non-examining State agency medical consultant, Dr. Alpert, reviewed the medical evidence in the record and opined that Plaintiff had "moderate" limitation in

his ability to accept instructions and respond appropriately to criticism from supervisors. (T. 77.)  Dr. Alpert opined that Plaintiff was "not significantly limited" in his ability to interact appropriately with the public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintaining socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (*Id.*)  Dr. Alpert reviewed Dr. Stramenga's opinion and stated "[t]he totality of the data on file indicates that [Plaintiff's] psychiatric status would produce limits in [his] stress tolerance associated with limits in [his] persistence and pace as well as limits in [his] ability to respond ideally to others in the workplace as indicated [] above."  (T. 79.)

As stated by Defendant, "[g]iven Plaintiff's complete lack of mental health treatment by a mental health professional during the period at issue, Dr. Stramenga's mental status examination which revealed only mild findings, and Dr. Alpert's expert opinion rendered after a thorough review of the record, the ALJ properly rejected the marked limitations included in Dr. Stramenga's opinion." (Dkt. No. 14 at 10 [Def.'s Mem. of Law].)  Therefore, the ALJ did not err in rejecting a portion of Dr. Stramenga's opinion and the ALJ's mental RFC determination was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is

further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: May 1, 2017

                                                                                          _/s/ Bill Carter_
William B. Mitchell Carter
U.S. Magistrate Judge